518 S.E.2d 824

Peggy BALLENGER, Appellant,

v.

CITY OF INMAN, Respondent.

No. 3008.

Court of Appeals of South Carolina.

Submitted May 11, 1999.

Decided June 14, 1999.

128

Kenneth C. Anthony, Jr., of Spartanburg, for appellant.

William E. Walsh, of Gaines, Walsh & Chapin, of Spartanburg, for respondent.

HUFF, Justice:

Peggy Ballenger brought a declaratory judgment action challenging the annexation of her property into the City of Inman. The matter was referred to the master-in-equity with direct appeal to the South Carolina Supreme Court. The master held the annexation was valid and effective. Ballenger appeals. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

In 1995, the City sought to annex property, including that owned by Ballenger, pursuant to S.C.Code Ann. § 5–3–150. To annex the property, the Town needed at least 75% of the freeholders within the area to be annexed, who owned at least 75% of the assessed valuation of the property in the area, to petition the City for annexation. *See* S.C.Code Ann. § 5–3–150(1) (Supp.1998). The tax records indicated one parcel of property in the area to be annexed was owned by Vester and Clara Kelly. Vester Kelly, however, had passed away in 1991, before the annexation attempt. He left as his intestate heirs

his wife, Clara Kelly, his daughter, Florine Rookard, and his grandson, Douglas Wright. His estate had not been probated. Larry Bagwell, an employee of the City of Inman, brought the petition to the house of Florine Rookard, where Clara Kelly resided.

At the time of the attempted annexation, Kelly was in her late nineties and was bedridden.[1] Rookard took the petition to her mother in the bedroom, while Bagwell waited in the living room. Bagwell knew Kelly was too feeble to come to the living room, but he did not know her state of mind that day. Rookard explained the petition to her mother. Kelly placed an "X" on the signature line. Rookard returned to the living room and signed Kelly's name beside the "X." Rookard and her nephew, Douglas Wright, then signed the petition. Although Rookard and Wright's names were not listed on the tax records, they owned a greater than one-tenth undivided possessory interest in the property with Kelly.

There were ten freeholders whose names appeared on the tax records as owning property in the area to be annexed. Ten people, including Rookard and Wright, signed the petition. The City accepted the petition and annexed the area in an ordinance ratified September 25, 1995.

In her challenge to the annexation, Ballenger asserted, because Rookard and Wright's names were not included in the tax records, they did not qualify as freeholders under the statute. She further asserted Kelly lacked mental capacity, making her signature invalid. Ballenger argued, if Kelly's signature were invalid, the petition would contain only seven of the ten freeholders and would not meet the seventy-five percent criteria of the statute. The City argued that Rookard and Wright should be considered freeholders. Accordingly, even if the court determined Kelly's signature should be excluded, the petition met the requirements of § 5–3–150(1). The master found the evidence presented was insufficient to establish that Kelly was incompetent, and held the annexation ordinance was valid. He declined to address the City's argument on Rookard and Wright's status as freeholders.

---

1. Kelly died in January of 1996, at the age of ninety-nine.

## LAW/ANALYSIS

### 1. Standard of Review

Section 5–3–150(1)(5) provides in part that a person owning property or residing in the area to be annexed, such as Ballenger, "may institute and maintain a suit in the court of common pleas, and in that suit the person may challenge and have adjudicated any issue raised in connection with the proposed or completed annexation ." S.C.Code Ann. § 5–3–150 (Supp.1998). The characterization of a declaratory judgment suit as either equitable or legal depends on the nature of the underlying controversy. *Felts v. Richland County,* 299 S.C. 214, 383 S.E.2d 261 (Ct.App.1989), *aff'd* 303 S.C. 354, 400 S.E.2d 781 (1991). In order to determine the standard of review to apply, we must look to the kind of action in which the issue involved would have been decided if there were no declaratory judgment procedure. *Id.; see also Pinckney v. City of Beaufort,* 296 S.C. 142, 370 S.E.2d 909 (Ct.App.1988) (where relief sought was invalidation of an ordinance based on boundary line, court must determine boundary line, an issue at law; accordingly, action was reviewed as one at law).

Ballenger seeks a determination that Kelly lacked mental capacity when she signed the petition. It is a well-settled doctrine in this state that the courts of equity take special charge of persons non compos mentis. *Shepard v. First American Mortgage Company,* 289 S.C. 516, 347 S.E.2d 118 (Ct.App.1986). "Persons of unsound mind, like infants, are under the special protection of the courts of equity with respect to their persons, property, and legal transactions." *Id.* at 518, 347 S.E.2d at 119; *see, e.g., Vereen v. Bell,* 256 S.C. 249, 182 S.E.2d 296 (1971) (action to rescind and cancel a deed on the ground of mental incapacity of grantor is equitable); *Atkinson v. Belser,* 273 S.C. 296, 255 S.E.2d 852 (1979) (action to set aside conveyances alleging fraud, undue influence and inadequate consideration reviewed as action in equity); *but see In re Estate of Weeks,* 329 S.C. 251, 495 S.E.2d 454 (Ct.App. 1997) (action to set aside will on ground of testator's incapacity is at law).

The dispositive question in this case concerns whether Kelly was competent to sign the petition for annexation.

We thus find this action sounds in equity. Accordingly, we may find facts in accordance with our own view of the preponderance of the evidence. *Townes Assoc., Ltd. v. City of Greenville,* 266 S.C. 81, 221 S.E.2d 773 (1976). However, we will not disregard the findings of the master who saw and heard the witnesses and was in a better position to judge their credibility. *Tiger, Inc. v. Fisher Agro, Inc.,* 301 S.C. 229, 391 S.E.2d 538 (1989).

2. Validity of Kelly's Signature

A municipal corporation's annexation of land is a legislative function with which the courts rarely interfere. *Bryant v. City of Charleston,* 295 S.C. 408, 368 S.E.2d 899 (1988). A proceeding resulting in annexation is presumptively valid. *Elwood Construction Co. v. Richards,* 265 S.C. 228, 217 S.E.2d 769 (1975). The burden is upon the party attacking the annexation to show that there has not been a compliance with the law.

In addition, as the party challenging Kelly's capacity, Ballenger has the burden of proving Kelly lacked capacity at the time she signed the annexation petition. *Eagles v. South Carolina National Bank,* 301 S.C. 402, 392 S.E.2d 187 (Ct.App.1990); *Rogers v. Nation,* 284 S.C. 330, 326 S.E.2d 182 (Ct.App.1985). The concept of mental incapacity is one of degree. A person may have sufficient mental capacity to transact some types of business and not others. *Lewis v. Lewis,* 199 S.C. 490, 20 S.E.2d 107 (1942). The mere fact that a person's mind has been weakened by old age, accident, or disease is not sufficient to show that he or she lacks mental capacity. *Id.; see also Vereen,* 256 S.C. at 251–252, 182 S.E.2d at 297 ("Mere infirmity of mind or body, not amounting to incapacity to understand the nature of the act, is insufficient to render a deed void."). In order to warrant the cancellation of a legal transaction on the basis of the grantor's mental incapacity, it must appear that the grantor was so incompetent as to fail to comprehend the nature of his act. *Atkinson v. Belser, supra.*

Rookard's testimony was the only evidence of Kelly's capacity at the time she placed her mark on the annexation petition. Rookard stated several times that her mother's

mind "was going." She also explained that her mother was worried a lot because of several deaths in the family. Rookard testified that she explained the petition to her mother and her mother "[sat] there and listened." Kelly nodded at the explanation, but did not comment on the petition. When asked if her mother understood the explanation, Rookard responded, "Well I thought that she did. I explained it to her real good." Rookard later testified that she did not know if her mother understood her explanation. Ms. Rookard was 79 years old at the time of the hearing and admitted to having a hard time remembering.

We agree with the master that Rookard's testimony was inconclusive regarding her mother's capacity to understand the petition for annexation. We find Ballenger failed to meet her burden of proving Kelly's lack of capacity to sign the petition for annexation.

Because we affirm the master's decision, we do not address the City's argument for alternate sustaining ground.

**AFFIRMED.**

HOWELL, C.J., and HOWARD, J., concur.